# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5789 | **DATE** | 10/29/2002 |
| **CASE TITLE** | IMI Norgren Inc. vs. D&D Tooling Manufacturing, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing reset from 9:00 1/7/03 to 9:00 11/26/03.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant/Third Party Plaintiff D&D Tooling & Manufacturing, Inc.'s Motion for Partial Summary Judgment and Third Party Defendant Metals Technology's Motion for Summary Judgment are hereby denied. D&D and Metals Technology failed to show that the damages IMI seeks are consequential and unrecoverable as a matter of law. Status set for 11/26/02 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 30 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 112 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IMI NORGREN INC., a Delaware corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 00 C 5789 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| D&D TOOLING & MANUFACTURING, INC., ) | |
| an Illinois corporation d/b/a ELECTRO METAL ) | |
| PRODUCTS, ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| METALS TECHNOLOGY CORPORATION, ) | |
| an Illinois corporation, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are motions for partial summary judgment by Defendant D&D Tooling & Manufacturing, Inc. and Third Party Defendant Metals Technology Corporation (collectively, the "Defendants"). These two motions have the same basis. Namely, the Defendants contest that they cannot be held responsible for certain damages they have labeled as "consequential." Because this Court cannot hold as a matter of law that the damages are consequential and unrecoverable, the motions are denied.

## BACKGROUND

### I. Parties and Jurisdiction

Plaintiff IMI Norgren ("IMI") is a Delaware Corporation. (R. 56-3, D&D Statement of

1

Material Facts ¶ 1.) Its principal place of business is Littleton, Colorado. (*Id.*) IMI manufactures pneumatic devices for industrial applications. (*Id.* ¶ 2.) Defendant/Third Party Plaintiff D&D Tooling & Manufacturing, Inc. ("D&D") is a closely-held Illinois corporation. (*Id.* ¶ 3.) D&D's principal place of business is Bolingbrook, Illinois. (*Id.*) D&D is engaged in the business of metal stamping. (*Id.* ¶ 4.) Third Party Defendant Metals Technology Corporation ("Metals Technology") is an Illinois corporation. (*Id.* ¶ 5.) Its principal place of business is Carol Stream Illinois. (*Id.* ¶ 5.) Metals Technology heat treats metal parts. (*Id.* ¶ 6.)

This Court has subject matter jurisdiction over the action between IMI and D&D through diversity of citizenship. *See* 28 U.S.C. § 1332(a). The Court has supplemental jurisdiction over the dispute between D&D and Metals Technology. *See* 28 U.S.C. § 1367(a).

## II.  Uncontested Facts

This case is a lesson on how many layers of companies can be involved in the manufacture a good, and how fragile the interdependence of these companies can be. The dispute centers around a module that was ultimately to be used in a truck's transmission. Truck manufactures such as Freightliner and Navistar purchased transmissions from Eaton. (R. 56-3, D&D Statement of Material Facts ¶ 13.) Eaton, in producing these transmissions, needed a control module that would be mounted onto the transmission housing. (*Id.*) That module served a control function and was linked to the gear shift in the truck's cab. (*Id.* ¶ 15.) Eaton subcontracted the production of the control module to IMI. (*Id.* ¶ 13.) Neither the truck manufacturers nor Eaton are parties to this action.

In order to manufacture the Eaton control module, IMI contracted with vendors to produce certain lever arms. Electro-Metals Products ("EMP") had been IMI's supplier of the

2

levers in question. (R. 56-3, D&D Statement of Material Facts ¶ 24.) D&D purchased a significant portion of the assets of EMP in late 1998.[1] (*Id.* ¶ 22.) D&D's purchase of EMP's assets included the acquisition of the stamping machines of the type used to stamp the IMI lever. (*Id.* ¶ 23.)

After D&D's acquisition of EMP's assets, IMI issued purchase orders to EMP for the manufacture of the lever arms on February 24, 1999, May 20, 1999, and December 8, 1999. D&D, through its purchase of EMP, was the recipient of the purchase orders. (R. 56-3, D&D Statement of Material Facts ¶ 11.) The lever arm was described on a certain part print and was assigned part number 42002-01. (*Id.* ¶ 12.) IMI and D&D agreed that the price per lever under the purchase orders would be $1.31. (*Id.* ¶28.)

D&D subcontracted the heat treatment of the stamped levers to Metals Technology for approximately six to seven cents per lever. (R. 56-3, D&D Statement of Material Facts ¶ 29.) One lever heat treated by Metals Technology and provided by D&D to IMI was incorporated into each control module. (*Id.* ¶ 30.) For the first 11 months of 1999, IMI produced approximately 56,000 control modules. (*Id.* ¶ 32.) For the purposes of its Motion for Partial Summary Judgment, D&D admits that approximately 1,500 of the levers it produced for IMI did not have the requisite degree of hardness. (*Id.* ¶ 35.) IMI believes there were more than 6,000 "soft" levers. (IMI Response to D&D Statement of Uncontested Facts ¶ 35.)

---

[1] There is some discrepancy as to whether IMI knew that D&D had taken over the previous subcontractor's accounts. While IMI claims that after the purchase D&D was doing business as EMP, D&D says that it was doing business simultaneous as D&D and as EMP. (R. 93-1, D&D Reply to Statement of Additional Material Facts ¶ 16.)

In manufacturing the lever arms for IMI, D&D was required to comply with two relevant specifications. First, it agreed to stamp the levers from metal stock to certain dimensional specifications. (R. 56-3, D&D Statement of Material Facts ¶ 17.) Second, it was obligated to heat treat each of the levers to certain hardness-related specifications. (*Id.*) The dimensional specifications were shown on a part print, which was not expressly referenced by IMI's purchase orders, but was physically attached to each purchase order sent to D&D.[2] (*Id.* ¶ 18.) D&D admits it had possession of the print part at all times after receiving the first purchase orders from IMI. D&D contracted with Metals Technology to heat treat the stamped levers for about six or seven cents per item. (*Id.* ¶ 29.)

Eaton began receiving reports of transmission malfunctions from truck drivers, truck owners, and repair facilities on November 29, 1999. (R. 56-3, D&D Statement of Material Facts ¶¶ 38-39.) Eaton determined that the levers in question were showing excessive wear due to insufficient hardness. (*Id.* ¶ 39.) The problem with the levers could cause a synchronizer within the transmission to burn up if a driver persisted in using a certain optional feature. (*Id.* ¶ 40.) This would require repair of the truck's transmission. (*Id.*) IMI placed the cost of the synchronizer repair at $1,000. (*Id.* ¶ 41.) If the truck driver continued to attempt to use this feature in the face of signs of transmission malfunctions, IMI claims that additional synchronizers within the truck's transmission could suffer damage. (*Id.* ¶ 42.)

Eaton took steps to recall trucks bearing IMI control module serial numbers that had been identified by IMI as being within a problem range to check the hardness of the levers and swap

---

[2] For the purposes of its Motion for Partial Summary Judgment only, D&D does not contest the four preceding sentences.

out the soft levers with those of appropriate hardness. (R. 56-3, D&D Statement of Material Facts ¶ 43.) IMI created a lever kit for Eaton's use. (*Id.* ¶ 44.) It places the cost of swapping out a lever at $100-150 per module. (*Id.* ¶ 45.) Some of the repair facilities replaced modules. In these cases, IMI claims that the cost of replacement was between $150 and $500 per module. (R. 56-3, D&D Statement of Material Facts ¶ 47.) Where the synchronizers had been damaged, the cost of repair was more than $500. (R. 59-1, Metals Technology Statement of Material Facts ¶ 73.)

IMI filed an action for breach of contract against D&D to recover damages it suffered as a result of the non-conforming heat treatment. (R. 9-1, First Am. Compl.) D&D filed a third party complaint against Metals Technology. (R. 14-1.) Metals Technology, in turn, filed a counterclaim against D&D. (R. 28-1.)

The parties agreed at the summary judgment stage to brief any issues regarding damages before addressing those regarding liability. IMI seeks more than $2,000,000 in damages for a breach of warranty. (R. 56-3, D&D Statement of Material Facts ¶ 48; R. 9-1, First Am. Compl.) IMI claims more than $1,660,000 in synchronizer repair costs, more than $255,434 in entire module swap out costs, and the balance in lever swap out and other costs. (R. 56-3, D&D Statement of Material Facts ¶ 48.)

On April 1, 2002, D&D filed a motion for partial summary judgment against IMI regarding the amount of damages for which it is subject to liability. (R. 56-1.) On the same day,

Metals Technology filed a motion for summary judgment on identical grounds.³ (R. 58-1.) For the purposes of those motions, the movants concede liability.

## ANALYSIS

### I.     Standard for Summary Judgment

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the non-movant and make all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The party who has the burden of proof must demonstrate that there is a genuine issue of material fact and not just rest on the pleadings. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the evidence is such that a reasonable fact-finder could find for the nonmoving party, then a genuine issue of material fact exists. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

---

³ Metals Techology's Motion for Summary Judgment is directed towards IMI, rather than D&D. What makes this filing unusual is that IMI has filed no claim against Metals Technology. It was D&D that brought Metals Technology in as a third-party defendant, and Metals Technology has filed a counterclaim against only D&D. IMI objects to Metals Technology's filing of this Motion, but does not develop the argument or provide any support for it. Thus, it has waived its objection to the filing. *Mohr v. Chicago Sch. Reform Bd. of Trs. of Bd.*, 194 F.Supp.2d 786, 789 n.1 (N.D. Ill. 2002). In any event, this Court need not decide whether Metals Technology's filing was proper, since a disposal of the D&D Motion for Summary Judgment will necessarily determine the merits of the Metals Technology's filing.

6

## II. Breach of Warranty Damages

In their motions, the Defendants contend that they cannot be held liable for a bulk of the damages as a matter of law. D&D and Metals Technology state that the vast majority of IMI's claimed injury is an attempt to recover for consequential damages under 810 ILCS 5/2-715(b).[4] They point out that consequential damages are only recoverable if certain elements are met under that section. D&D and Metals Technology then argue that those elements do not exist, thus IMI cannot recover for the bulk of its damages. IMI, in response, states that the damages it seeks are the cost of repair or replacement. IMI argues that these costs are therefore recoverable as direct damages under § 2-714. IMI further claims that even if the damages do not fall under § 2-714, they are recoverable as consequential damages under § 2-715(b).

D&D and Metals Technology clearly put the cart before the horse in their analysis. They have thoroughly informed this Court why they believe most of IMI's claimed injury is not recoverable as consequential damages under § 2-715(b). What they have failed to analyze, however, is why IMI's claimed injury is rightfully labeled as consequential damages rather than direct damages under § 2-714. Further, they have failed to articulate the proper measure of direct damages under that section. It is clear that in not undertaking this analysis and in asserting an

---

[4] According to the Illinois Uniform Commercial Code, consequential damages include:

> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

810 ILCS 5/2-715(b).

7

improper measure of damages, the Defendants have failed to show that they are entitled to judgment as a matter of law.

### A. Defining Direct and Consequential Damages.

Under Illinois law, direct damages under § 2-714 are those that "result from an act without the intervention of any intermediate controlling or self-efficient cause." *Royal Ins. Co. of Am. v. Insignia Fin. Group, Inc.*, 323 Ill. App. 3d 58, 64, 751 N.E.2d 164, 170 (1st Dist. 2001) (quoting 25 CORPUS JURIS SECUNDUM § 2 (1966)). Damages that can be labeled as direct "include all such injurious consequences as proceed from, or have direct causal connection with, such consequences." *Id.* Consequential damages under § 2-715, on the other hand, "are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act." *Id.*

The classification of damages as direct or consequential is not as easy as it appears from the definitions. "[T]he distinction between general or direct damages on the one hand and consequential damages on the other is relative not absolute." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 10-4d. (4th ed. 2002). "In many cases, the consequential damages that appear to be recoverable under 2-715(2) may overlap with the direct 'difference-in-value' damages recoverable under 2-714(2)." *Id.*

### B. Defendants have not Shown that Plaintiff's Damages are Unavailable under Section 2-714 as a Matter of Law.

According to the Illinois' Uniform Commercial Code, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the

goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 810 ILCS 5/2-714(2); *Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 91 (7th Cir. 1985). D&D and Metals Technology take this definition to mean that the Court has two options in measuring damages.

Defendants first argue that the Court can measure damages by deducting the cost of heat treatment from the price of the goods. That calculation would leave IMI with a recovery of $90, according to the Defendants, by multiplying the approximately 1,500 levers that were not heat treated by the heat treatment cost of $.065. The second alternative proposed by the Defendants is for this Court to find that the levers were rendered unusable because of the improper heat treatment. Under this scenario, the Court could place a zero value on the soft levers. Thus, the recovery would be an approximate total of $2,000, representing the 1,500 non-heated treated levers multiplied by the $1.31 purchase price of the levers.

In a strict interpretation of the statutory language, D&D and Metals Technology might be correct. But a strict interpretation is not what is called for by the Illinois legislature or by courts construing the statute. In fact, Illinois law provides that the remedies available to a plaintiff "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." 810 ILCS 5/1-106.

In placing the plaintiff in that position, it is well settled in Illinois that the measure of direct damages for a breach when a defendant has provided less than full performance or has provided defective performance is the cost of correcting the defective condition. *Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc.*, 288 Ill.App.3d 1080, 1082, 681 N.E.2d 1049,

1050 (5th Dist. 1997) (citing *Park v. Sohn*, 89 Ill.2d 453, 464, 433 N.E.2d 651, 657 (1982)). To that end, Illinois law allows the costs of repair, replacement, and restoration to be included as direct damages under § 2-714(2). *See, e.g., Schroeder v. Barth, Inc.*, 969 F.2d 421, 424 (7th Cir. 1992) (cost of repair); *Continental Sand & Gravel*, 755 F.2d at 91 (cost of repair); *Custom Automated Mach. v. Penda Corp.*, 537 F.Supp. 77, 84 (N.D. Ill. 1982) (cost of repair); *Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 108 Ill.App.3d 1120, 1126, 440 N.E.2d 153, 157 (5th Dist. 1982) (cost of repair and replacement); *Regopoulos v. Waukegan P'ship*, 240 Ill.App.3d 668, 678, 608 N.E.2d 457, 464 (1st Dist. 1992) (cost of restoration). Because there are no intervening factors, courts consider these costs to be direct rather than consequential.

Defendants' assertions that damages under § 2-714 are capped at the value of the transaction is without merit. In the end, D&D and Metals Technology may ultimately be liable for damages that exceed the amount they were paid. As the Seventh Circuit recognizes, "it is not unusual for damages in a breach of warranty case to exceed the purchase price of the goods. This result is logical, since to limit recoverable damages by the purchase price, as defendants suggest, would clearly deprive the purchaser of the benefit of its bargain in cases in which the value of the goods as warranted exceeds that price." *Continental Sand & Gravel*, 755 F.2d at 91 (citations omitted).

Defendants clearly do not understand § 2-714. They have offered little support for their argument that the two alternate calculations of damages they offer are the only ones available under this section. D&D and Metals Technology have failed to show the Court why, as a matter of law, the damages sought by IMI fall outside of the recovery available under § 2-714.

## C. Defendants' Section 2-715 Analysis is a "Trap."

The damage analysis that D&D and Metals Technology undertake is neither dispositive nor persuasive. After stating that the bulk of IMI's claimed injury is an attempt to recover for consequential damages under § 2-715, D&D and Metals Technology point out that consequential damages are only recoverable if certain elements are met under that section. Then, D&D and Metals Technology argue that those elements do not exist, so no recovery of the bulk of IMI's damages is possible. Thus, the Plaintiff has set a "trap for the unwary." WHITE & SUMMERS, *supra*, § 10-4b. Professors White and Summers have illustrated this trap in the context of contractual provisions excluding the recovery of consequential damages. In the typical situation, a defendant invites a court:

> merely to go to what is stated in 2-715(2), treat that as a complete definition, and then apply a "no consequential damages" clause to exclude all of the damages satisfying the incomplete definition in 2-715(2). This would exclude not only damages not in the ordinary course, but also damages in the ordinary course. That is, general or direct damages as well as consequential damages would be excluded. This is because general or direct damages might satisfy the incomplete "definitional" requirements of 2-715(2) and so be erroneously classified as consequential. These damages would obviously be ones the seller had "reason to know" of (because flowing in the ordinary course), would result from seller's failure to meet "general or particular requirements or needs of the buyer," and could also be damages not preventable or otherwise.

*Id.* Despite the absence of a limitation on damages provision in any contract with IMI, the Defendants take the same mistaken approach. To state in a conclusory fashion that the damages are consequential, then show why they do not meet the elements of being recoverable is to set an analogous trap.

### D. Defendants have not Shown that IMI's Damages are Unrecoverable.

Furthermore, the type of damages IMI seeks seems closer to those awarded by courts as direct rather than consequential. For example, in *Continental Sand & Gravel*, the Seventh Circuit awarded repair costs under § 2-714, but refused recovery of profits because they were consequential damages. 755 F.2d 87. *See also Schultz v. Jackson*, 67 Ill.App.3d 889, 894, 385 N.E.2d 162, 165 (3d Dist. 1979) (where contract excluded consequential damages, plaintiff's sole remedy is repair or replacement of defective parts). The Court already has cited cases in its earlier analysis where similar recovery is allowed under § 2-714. IMI suffered out of pocket damages of more than $2,000,000 associated with Defendants' breach. It paid more than $1,660,000 for the repair of synchronizers, more than $255,434 in replacing the entire modules, and the remainder in replacing the lever and other costs. The Court cannot categorize these damages as consequential given the factual record and legal arguments presented.

Even if the Court were to label these damages as consequential, they still might be recoverable. "[I]t is well-settled that consequential damages for breach of warranties are available where such damages occur." *Taylor & Gaskin, Inc. v. Chris-Craft Indus.*, 732 F.2d 1273, 1278 (6th Cir. 1984). The purpose of consequential damages is to prevent the plaintiff from being deprived of substantial value of bargain and to provide the plaintiff with minimum adequate remedies. *AES Tech. Sys., Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir. 1978). Section 2-715 therefore does not act to limit IMI's potential recovery as Defendants would have this Court hold.

## CONCLUSION

Given that what IMI is claiming appears to be its out of pocket damages, this Court will liberally administer the provisions of the UCC to put IMI in as good a position as if the Defendants had fully performed, as required by Illinois law. 810 ILCS 5/1-106. D&D's Motion for Partial Summary Judgment and Metals Technology's Motion for Summary Judgment have not provided this Court with a sufficient reason to limit the damages that IMI should be able to recover as a matter of law. Therefore, the Defendants' Motions are denied.

DATED: October 29, 2002                ENTERED

                                                                     _____
                                                                     AMY J. ST. EVE
                                                                     United States District Court Judge