# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5789 | **DATE** | 1/6/2003 |
| **CASE TITLE** | IMI Norgren, Inc. vs. D&D Tooling Mfg., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's Motion to Reconsider Order Denying Defendant's Motion for Summary Judgement as to Damages is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN ? ? 2003 | |
| | Notified counsel by telephone. | | date docketed | 114 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



IMI NORGREN INC., a Delaware corporation, )
)
Plaintiff, )
) Case No. 00 C 5789
v. )
) Judge Amy J. St. Eve
D&D TOOLING & MANUFACTURING, INC., )
an Illinois corporation d/b/a ELECTRO METAL )
PRODUCTS, )
)
Defendant/Third-Party Plaintiff, )
)
v. )
)
METALS TECHNOLOGY CORPORATION, )
an Illinois corporation, )
)
Third-Party Defendant. )

## MEMORANDUM OPINION AND ORDER

Defendant D&D Tooling and Manufacturing, Inc. ("D&D") has filed a motion asking this Court to reconsider its October 29, 2002 Memorandum Opinion and Order (the "Opinion"), which is published at 2002 WL 31433401. This Court has found no reason to reconsider or modify that Order and therefore denies D&D's Motion to Reconsider.

## INTRODUCTION

On October 29, 2002, the Court denied D&D's Motion for Partial Summary Judgment and Third-Party Defendant Metals Technology's Motion for Summary Judgment, holding that the movants failed to show that a substantial amount of Plaintiff's damages were consequential and unrecoverable as a matter of law. In a status call on November 26, 2002, D&D stated that it

1

wished to file a motion to reconsider. It did not do so until December 30, 2002, or more than 60 days after the Court issued the Order.

## ANALYSIS

### I. The Format of the Motion.

Local Rule 7.1 requires briefs to be no longer than 15 pages. D&D's motion to reconsider squeezes the text into 15 pages by manipulating the format of the brief. In doing so, it has failed to comply with the requirements of Local Rule 5.2 and the spirit of Local Rule 7.1. Specifically, Defendant's margins are smaller than the one-inch allowed by Local Rules. In addition, Defendant violates the Local Rules' requirement of a font in the body of the text of 12 points, and a font in the footnotes of no less than 11 points. Briefs not conforming with these rules can be stricken. *See* Local Rule 5.2(b); Local Rule 7.1.

The submission of a brief with a manipulated format shows a lack of respect for the court system and the litigants. This Court is not the only one to view format games this way. As Judge Castillo has said:

> It is improper to avoid the fifteen-page limit for memoranda by playing with the font, line spacing, or margins. Resort to these tactics is embarrassing, and we advise attorneys to instead edit their drafts or face possible sanctions. If, after rigorously editing one's work (*i.e.*, deleting repetitious matter, useless verbiage, and material that presents nothing more than counsel's indignance), a memorandum still exceeds the page limit, the proper course is to request leave to file an over-sized brief.

*Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000).

Judge Coar, in confronting a similar situation, has expressed his displeasure at the antics, stating: "Such activities are disrespectful to this court and to opposing counsel. They also go against the spirit of the page limitation and make it more difficult for this court to consider

motions as carefully and efficiently as possible." *Reyes v. City of Chicago*, No. 98 C 1136, 1999 WL 608768, at *2 n.1 (N.D. Ill. Aug. 6, 1999).

This is not the first time that D&D's attorney of record has failed to follow these type rules. In *Kerger v. Board of Trustees of Community College Dist. No. 502*, 295 Ill.App.3d 272, 275, 692 N.E.2d 695, 698 (Ill. App. Ct. 1998), the court struck portions of the attorney's brief for not complying with the Illinois Supreme Court rules regarding page limits and footnotes.

Although the Court has the ability to strike this motion for the intentional manipulation of the format, it decided to consider the motion based on its content. D&D and its attorneys are admonished, however, that failure to comply with these rules in the future will result in the Court striking their motions.

## II.    Standards for Reconsideration of Order Denying Summary Judgment.

Motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling. *Scharlte v. Motorola, Inc.*, No. 93 C 5508, 1994 WL 323281, at *1 (N.D. Ill. June 24, 1994). The Seventh Circuit has repeatedly cautioned that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992) ("motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."). Whether to grant reconsideration is committed to the sound discretion of the court. *Cause Nationale de Credit v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996).

D&D's motion to reconsider is based on an interlocutory order. *See Navistar Int'l*

*Transp. Corp. v. Freighliner Corp.*, No. 96 C 6922, 1998 WL 786388, at *1 (N.D. Ill. Nov. 6, 1998). There is no Federal Rule that allows the filing of a motion to reconsider such an order. *Id.* Courts have instead recognized a "common law" motion to reconsider, which is appropriate if: (1) the Court has patently misunderstood a party; (2) the Court has made a decision outside the adversarial issues presented to the Court by the parties; (3) the Court has made an error not of reasoning but of apprehension; (4) there is a controlling or significant change in the law or facts since the submission of the issue to the Court. *See, e.g., Neal v. Honeywell, Inc.*, No. 93 C 1143, 1996 WL 627616, at *2 (N.D. Ill. Oct. 25, 1996) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). D&D claims that its motion to reconsider should be granted "to correct manifest errors of law because the Court has misapprehended and/or overlooked arguments previously made." (Brief at 4.) The Court construes this argument to mean that D&D believes reconsideration to be appropriate under the first and third standards (i.e., that the Court purportedly misunderstood D&D and/or made an error of apprehension).

## III. The Court Did Not Misunderstand D&D Or Make An Error Of Apprehension.

This opinion will not re-state the undisputed facts and background in the case. Those can be found in the previous opinion at 2002 WL 31433403. Instead, the Court will focus solely on the arguments put forth by D&D and whether they warrant a reconsideration.

### A. Consequential versus Direct Damages.

In the Opinion, the Court found that D&D had failed to show that, as a matter of law, the damages sought by Plaintiff were consequential rather than direct. Specifically, the Court stated that D&D failed to conduct a proper analysis as to "why they believe most of IMI's claimed injury is rightfully labeled as consequential damages rather than direct damages." D&D argues

4

that it did make this analysis in pages four through six of its memorandum in support of summary judgment and that the Court simply overlooked it. D&D outrageously suggests, in fact, that the Court did not even read its memorandum.

Defendant's suggestion that this Court would issue a ruling without reading the briefs is disrespectful, unprofessional and simply ridiculous. A review of Defendant's cursory and undeveloped arguments shows that D&D did not analyze why the damages should be classified as consequential, rather than direct.

On pages four and five of its memorandum, D&D does two things. First, it quotes §§ 2-714 & 2-715 of the Illinois Uniform Commercial Code. This simple task does not provide the necessary analysis. Second, D&D states in a conclusory fashion that the damages Plaintiff seeks are not recoverable because this is not a "proper case" to allow consequential damages. Nothing in these pages can even be considered an analysis of whether the damages Plaintiff seeks are direct or consequential.

On page six of the memorandum, D&D asserts that direct damages under Illinois law are limited to the difference in the value of the goods as accepted and the value they would have had if they had been sold as warranted. To the extent that D&D's analysis is that Plaintiff's damages cannot be considered to be direct because they reflect something outside of the calculation of the value of the product received compared to the value of the product as warranted, the Court previously rejected this position. *Id.* at *5. Defendant, as stated in the Order, has ignored several other measures of damages under § 2-714, such as cost of repair and cost of replacement. The Court considered D&D's arguments earlier and rejected them. The Court did not misunderstand D&D or make an error of apprehension. Thus, reconsideration is not warranted.

**B. Providing Plaintiff with All Reasonable Inferences, Damage to an Automobile System was Reasonably Foreseeable.**

D&D argues for the first time that even if the damages were direct, they were not reasonably foreseeable. As stated earlier, a motion to reconsider is not the avenue to raise new legal theories. Had D&D raised this argument in its motion for summary judgment, however, it still would not have been compelling.

On a motion for summary judgment, all reasonable inferences are drawn in favor of the nonmovant. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988). All disputes of fact are to be resolved in the nonmovant's favor. *Id.* Whether D&D knew that the lever was to be used in an automotive system is a disputed material fact. (R. 76-1, Pl.'s Response to D&D Statement of Undisputed Facts ¶ 26.) Therefore, for the purposes of the summary judgment motion, the Court will presume that D&D had knowledge that the lever was to be used in an automotive system. Providing Plaintiff with all proper inferences, it was reasonably foreseeable that an improperly heat-treated lever would have a detrimental effect on an automotive system and that an automobile recall might occur.

D&D submits that it did not know that the parts were to be used on Eaton truck transmission. D&D fails to identify anything that differentiates the damages on an Eaton truck transmission from the damages that would have occurred if the lever had been placed in another automotive system. Accordingly, D&D need not know that the damage was to occur on an Eaton truck transmission, so long as it was foreseeable that damage on some system would occur. *See Sovereign Chemical & Petroleum Products, Inc. v. American Oil Corp.*, 148 F.R.D. 208, 213 (N.D. Ill. 1992) ("Whether the pipes that burst happened to be radiator pipes, drinking water

pipes, sprinkler pipes, or some other pipe should not affect whether water damage from burst pipes was a foreseeable event."). As this was a new argument without merit, the Court did not previously misunderstand D&D or make an error of apprehension to warrant reconsideration.

### C. D&D did not Show that the Repair Costs should have been Consequential Damages.

D&D argues that this Court erroneously called some of the damages "repair costs." D&D claims that the direct repair costs must be limited "to the product sold and warranted, NOT repair costs to other items." In other words, D&D argues that if one product damages another product, there can be no recovery under direct damages for the injury to the second product. D&D cites only to a case in the Northern District of Mississippi from 1977 in support of this position. (Brief at 11 (citing *R. Clinton Construction Co. v. Bryant & Reaves, Inc.*, 442 F.Supp. 838 (N.D. Miss. 1977).) Even this case does not provide any guidance. It merely states that a jury found a defendant which sold defective anti-freeze liable for the consequential engine damage. The opinion does not discuss whether these damages were correctly classified as consequential rather than direct.

Even if this Court were to agree with the position that injury to a second product cannot be considered direct, Defendant did not raise or develop an argument on whether the lever, the module, and the transmission should be considered one product or two or three. Because the argument was not raised or developed, it is waived for the purposes of its motion. *Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1192 (7th Cir.1999) (holding that argument that was "so little developed in plaintiff's opening brief in this court" was waived).

The Court notes that this District, in applying Illinois law, has viewed a sub-component of a part and the part itself as one product. *See Coleman Cable Sys., Inc. v. Shell Oil Co.*, 847 F.Supp. 93 (N.D. Ill. 1994). In *Coleman*, the plaintiff was a manufacturer of electrical cable. It purchased plastic insulation for the cables from the defendant. The plastic insulation caused a chemical reaction that rendered the cables unsuitable for normal use. Judge Zagel found the cable and the insulation to be one product. He therefore dismissed negligence and negligent misrepresentation counts on the grounds that Illinois law only allows recovery in contract – not tort – for pure economic losses caused by damage to one product. *Id.* at 94 (citing *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 450-51, 453 (Ill. 1982)).

As *Coleman* shows, a sub-component and the component itself can be treated as one product. It is appropriate to do so at this stage, since Plaintiff is entitled to all reasonable inferences and because D&D has failed to develop an argument as to how many products the transmission system represents. The Court did not misunderstand D&D's earlier arguments or make an error of apprehension to warrant reconsideration.

### D. Under Illinois Law, Breach of Warranty Remedies are to be Liberally Administered to Make the Aggrieved Party Whole.

Under Illinois law, the remedies available to a plaintiff for breach of warranty "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." 810 ILCS 5/1-106. The proper measure of direct damages for a breach is the cost of correcting the defective condition. *Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc.*, 681 N.E.2d 1049, 1050, 288 Ill.App.3d 1080, 1082 (Ill. App. Ct. 1997).

Many of the cases relied upon by D&D hold that loss of income is a consequential damage. Here, IMI is not attempting to recover for a loss of income or a loss of profits. What it seeks to recover are those damages that were truly its out of pocket costs – the costs to repair the condition which D&D is willing to admit (for summary judgment purposes) that it caused.

### E. D&D's Motion Evidenced an Inability to Comprehend the Opinion.

D&D accuses this Court of engaging in "outcome determinative jurisprudence." It claims that the opinion is "unprincipled" and states that it calls for courts "with identical fact patterns . . . [to] decide the same cases differently." It is clear that while accusing this Court of not reading its motions and memoranda, D&D has failed to comprehend the Court's Opinion. The facts before this Court on a motion for summary judgment are those included in a Local Rule 56.1 Statement of Undisputed Material Facts. The Court did not hold that it could never determine whether the damages were consequential or direct. Instead, the Opinion stated that "[t]he Court cannot categorize these damages as consequential *given the factual record and legal arguments presented.*" *Id.* at *6. The Court could not decide at the summary judgment stage, based on the record before it, that the damages were not in the ordinary course of business. D&D is free to argue at a later stage that it cannot be liable for these damages.

D&D argues that the Court "erroneously embraced and applied a policy argument that would eviscerate the Uniform Commercial Code's incorporation of common law damage limiting principles" and in doing so "the Court . . . disregarded established law and precedent, instead acting in legislative fashion." Contrary to D&D's assertion, the Court did not base its reasoning on any policy argument other than that adopted by the Illinois legislature and articulated by the Illinois judiciary. D&D misstates the Court's opinion entirely. The Court did

9

not say that consequential damages were available as a matter of law. The Court merely stated that there was a material dispute of fact at this stage. The Court certainly follows law and precedent. It is insulting to insinuate otherwise.

D&D's motion is laden with suggestions that the Court failed to read pleadings, exceeded the scope of its duties, improperly acted as a legislator, ignored the developed law, misread and misconstrued cases, and decided the motion based on an outcome that the Court thought was fair, rather than the outcome compelled by precedent. The Court finds these suggestions to be entirely inappropriate, disrespectful, and wrong. It is disingenuous for Defendant to attack the Court to compensate for the deficiencies in the legal argument and factual record that it submitted.

## CONCLUSION

The Court finds that D&D's motion to reconsider is merely an attempt to rehash old arguments and raise new ones. It is improper and is therefore denied.

DATED: January 6, 2003               ENTERED

AMY J. ST. EVE
United States District Judge