# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5789 | **DATE** | 6/24/2003 |
| **CASE TITLE** | IMI Norgren vs. D&D Tooling | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Third party Defendant Metal Technology's motion for summary judgment is granted. Third party Defendant Metal Technology's motion to deem facts admitted is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| TH✓ | courtroom deputy's initials | date mailed notice |

U.S. DISTRICT COURT

03 JUN 24 PM 4: 56

FILED 10

Date/time received in central Clerk's Office

JUN 2 5 2003

Document Number

157

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IMI NORGREN INC., a Delaware corporation,  )
                                          )
        Plaintiff,                   )
                                          )     Case No. 00 C 5789
            v.                     )
                                          )
D&D TOOLING & MANUFACTURING, INC.,  )
an Illinois corporation d/b/a ELECTRO METAL  )
PRODUCTS,  )
                                        )
    Defendant/Third-Party Plaintiff,    )
                                          )
            v.                    )
                                          )
METALS TECHNOLOGY CORPORATION,  )
an Illinois corporation,  )
                                        )
    Third-Party Defendant.       )

DOCKETED
JUN 2 5 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

    D&D Tooling & Manufacturing, Inc. ("D&D") filed a third-party complaint against

Metals Technology Corporation ("Metals Technology") for breach of implied warranty, breach of

express warranty, and breach of contract. Metals Technology moves for summary judgment. For

the reasons stated herein, Metals Technology's motion is granted.

### BACKGROUND

### I.    Jurisdiction

    This action began when IMI Norgren filed state law claims against D&D after D&D

allegedly provided it with non-conforming goods. This Court has subject matter jurisdiction over

that initial dispute due to diversity between the two original parties, IMI Norgren and D&D, and

an amount in controversy between those two of more than $75,000. (*See* R. 134-1, D&D's Resp. to Statement of Material Facts ¶¶ 1, 3, 4.) D&D responded by filing a third-party complaint against Metals Technology, which it alleges is responsible for the purported non-conformity of the goods. The Court has supplemental jurisdiction over the dispute between D&D and Metals Technology. *See* 28 U.S.C. § 1367(a).

## II. Uncontested Facts

### A. The Parties' Relationship

D&D has been in the tool and die business since 1987. (R. 134-1, D&D's Resp. to Statement of Material Facts ¶ 29.) It employs approximately 180 people. (*Id.*) From 1997 to 2000, D&D used Metals Technology as its primary source for the performance of heat treating services for parts that D&D manufactured. (*See* R. 134-1, D&D's Resp. to Statement of Material Facts ¶¶ 6-7.) During this time, Metals Technology filled hundreds of D&D's orders for heat treating services. (*Id.* ¶ 14.) In each of these transactions, Metals Technology provided D&D with written quotes, delivery receipts and/or invoices. (*Id.* ¶ 15.)

### B. Statement of limited liability

At all times, Metals Technology incorporated a statement of limited liability as part of its terms and conditions for doing business with D&D in its written quotes, delivery receipts and invoices:

> It is recognized that even after employing all the scientific methods known to us, hazards still remain in metal treating and material handling. THEREFORE, OUR LIABILITY, WHILE IN OUR CUSTODY, SHALL NOT EXCEED TWICE THE AMOUNT OF OUR CHARGES FOR THE WORK DONE ON ANY MATERIAL . . . .

> The customer . . . agrees to accept the limits of liability as
> expressed in this Statement to the exclusion of any and all
> provisions as to liability on the customer's own invoices, purchase
> orders, or other documents . . . .
>
> THE AFOREMENTIONED STATEMENT OF LIABILITY
> MENTIONED ABOVE IS SPECIFICALLY IN LIEU OF ANY
> EXPRESS OR IMPLIED WARRANTY, INCLUDING ANY
> IMPLIED WARRANTY OF MERCHANTABILITY OR
> FITNESS, AND OF ANY OTHER SUCH OBLIGATION ON
> THE PART OF THE TREATER.
>
> * * *
>
> OUR LIABILITY TO OUR CUSTOMERS SHALL CEASE
> ONCE ANY FURTHER PROCESSING, ASSEMBLING OR
> ANY OTHER WORK HAS BEEN UNDERTAKEN ON SAID
> MATERIAL.
>
> No agent or representative is authorized to alter the above
> conditions, except by writing duly signed by the treater.

(*Id.* ¶¶ 8-9, 11 (capitals in original).)

The quotations and invoices stated on the front, "SEE REVERSE SIDE FOR MTI

STATEMENT OF LIMITED LIABILITY." (*Id.* ¶¶ 16-17 (capitals in original).) These terms

and conditions were recommended by a trade association comprised of businesses engaged in the

heat treating of metal parts. (*Id.* ¶ 21.) D&D never took exception to Metals Technology's terms

and conditions of limited liability. (*See* R. 134-1, D&D's Resp. to Statement of Material Facts ¶¶

12, 22, 38.)

### C.    Certified Inspection Reports

Metals Technology provided D&D with its standard Certified Inspection Reports

regarding its quality control efforts on the finger lever parts. (R. 134-1, D&D's Resp. to

Statement of Material Facts ¶ 23.) In these reports, a Metals Technology quality assurance

3

manager signed a statement that "material processes have been performed in accordance with the specification shown above. I have inspected the work and the sampling and results are as indicated." (Metals Technology's Statement of Material Facts, Ex. F.6.)

### D. Processing of the Parts

In the transactions in question, D&D agreed to have Metals Technology heat treat finger lever parts. (R. 134-1, D&D's Resp. to Statement of Material Facts ¶ 42.) When Metals Technology sent the parts back to D&D, D&D did not conduct any testing to verify that the heat treatment specifications had been met. (*Id.* ¶ 44.) Instead, D&D sent the parts out to a third party to remove their rough edges ("deburring"). (*Id.* ¶ 42.) Once deburred, D&D sent the parts to IMI Norgren for assembly into a module. (*Id.* ¶ 44.) Each of the finger lever parts went through this further processing and assembly before D&D made any claim that the parts were not in compliance with any contract term or warranty. (*Id.* ¶ 45.)

### STANDARD

Summary judgment is proper when the factual record submitted by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue,

4

however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position, however, is not sufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

The Court construes the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in its favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## ANALYSIS

Metals Technology attacks D&D's claims in several ways. First, it maintains that the undisputed facts show that the parties' contract contains no implied warranties. Second, it argues that there is no evidence that it breached any express warranty. Third, Metals Technology claims that the undisputed facts demonstrate that its liability for damages is limited by the parties' contractual terms.

## I. The Undisputed Facts Show That D&D's Implied Warranty Claims Fail

D&D alleges that Metals Technology has breached implied warranties that are written into the parties' agreements through the Illinois version of the Uniform Commercial Code (the "U.C.C."). *See* 810 ILCS 5/2-314; 810 ILCS 5/2-315. Metals Technology argues that it is

5

entitled to summary judgment on D&D's implied warranty allegations because the U.C.C. does not apply to the parties' contract.

D&D bears the burden of establishing that the U.C.C. governs the agreement. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 530 (7th Cir. 1999). Under Illinois law, the U.C.C. only applies to "transactions in goods." 810 ILCS 5/2-102. Where a contract involves both transactions in goods and the provision of services, Illinois law requires a court to analyze the contract's predominant purpose. *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1102 (7th Cir. 1997); *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1153 (7th Cir. 1989); *Yorke v. B.F. Goodrich Co.*, 474 N.E.2d 20, 22 (Ill. App. Ct. 1985). The U.C.C. only applies if the contract's predominant purpose is the sale of goods. *Zayre Corp.*, 882 F.2d at 1153-54.

It is clear that the U.C.C. does not govern the parties' agreement. The undisputed facts demonstrate that the parties only intended for Metals Technology to service goods provided by D&D. Metals Technology did not sell any goods to D&D. It did not manufacture the finger lever parts. Instead, D&D provided these goods to Metals Technology only for Metals Technology to heat treat them. The undisputed facts show that the change in physical custody of the goods was only incidental to the transaction; therefore the parties' agreement was a contract for the performance of services, and not for sale of goods. *See Manes Org., Inc. v. Standard Dyeing & Finishing Co.*, 472 F.Supp. 687, 690 n.3 (S.D.N.Y. 1979) (U.C.C. inapplicable where textile company furnished raw fabric to dyeing and finishing company for processing). Accordingly, the U.C.C. is inapplicable and Metals Technology is entitled to judgment on D&D's breach of implied warranty claim.

6

## II.    The Breach of Express Warranty

Metals Technology argues that D&D cannot show that it breached any express warranties because none were written into the contract. D&D counters that Metals Technology breached an express warranty in its Certified Inspection Reports. These reports were generated for quality assurance purposes. They documented Metals Technology's testing on a sampling of the finger lever parts to determine whether the sample fit within the specification that D&D required. In these reports, Metals Technology first lists the hardness specification required by D&D. Then Metals Technology confirms that a sampling of the products conforms with that specification. Finally, Metals Technology has a quality assurance manager "certify that applicable material processes have been performed in accordance with the specification shown above."

The parties dispute whether this last statement – that Metals Technology performed the process in accordance with the specification – constitutes an express warranty that Metals Technology appropriately heat treated all finger lever parts. D&D claims that this statement is a warranty by Metals Technology that it heat treated parts to comply with the specification contained on the purchase order. Metals Technology maintains that the Certified Inspection Reports make no claims about the process that it followed generally, and that the statement only indicates that the sampling of products conformed to the specification. Because the statement is ambiguous and there is a lack of a factual record to provide the proper context, the Court cannot resolve whether a correct interpretation of the statement is that it certified that Metals Technology had properly performed heat treatment to comply with D&D's specification.

Even if D&D's interpretation of this statement is correct, however, its breach of express warranty claim still fails against Metals Technology. As Metals Technology points out, D&D

has offered no evidence that Metals Technology breached this express warranty. D&D only submitted statements of additional facts that relate to its defense of IMI Norgren's claims. (R. 136-1, D&D Statement of Add'l Material Facts.) D&D does not even mention Metals Technology in these statements of additional facts. (*Id.*) Because D&D ultimately bears the burden on this particular issue, it was required to produce some evidence of Metals Technology's breach. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. In failing to do so, D&D has not met its burden at this stage of demonstrating that there is a dispute of material fact as to whether Metals Technology breached any express warranty. Accordingly, Metals Technology is entitled to judgment on D&D's express warranty claims.

## III. Liability

As a final matter, Metals Technology argues that it cannot be held liable for any breach because, by contract, its liability ended once D&D put the finger lever parts through further processing. The provision at issue is contained in Metal Technology's general limitations of liability provision. "OUR LIABILITY TO OUR CUSTOMERS SHALL CEASE ONCE ANY FURTHER PROCESSING, ASSEMBLING OR ANY OTHER WORK HAS BEEN UNDERTAKEN ON SAID MATERIAL." (R. 134-1, D&D's Resp. to Statement of Material Facts ¶ 20 (capitals in original).) D&D counters that this provision is not effective because the Certified Inspection Reports altered the Metals Technology's limitation of liability.[1] D&D points

---

[1] D&D also argues that the provision is unenforceable under the U.C.C., because the remedies available to D&D failed their essential purpose and because the provision in unconscionable. These arguments fail, however, because the Court has already held that the U.C.C. is inapplicable to this contract that is for the provision of services. D&D has made no argument that the provision would also be unenforceable for these reasons under Illinois common law.

8

out that the parties' agreement states that the limitation of liability provision could be altered "by writing duly signed by the treater."

While the Certified Inspection Reports are a writing signed by an agent of Metals Technology, D&D does not explain what in the reports altered the limitation of liability provision. The Certified Inspection Reports do not mention Metals Technology's liability whatsoever. As the Court stated previously, the best case scenario for D&D is that the Certified Inspection Reports warrant that Metals Technology performed the proper heat treatment on the finger lever parts. Even this interpretation, however, has nothing to do with Metals Technology's limitation of liability once D&D put the products through further processing.

The undisputed facts show that the Certified Inspection Reports did not alter the limitation of liability provision. Since the provision is effective, Metals Technology is not liable for any breach because D&D admits that it further processed the finger lever parts through deburring after Metals Technology's heat treatment.

## CONCLUSION

The undisputed facts show that Metals Technology is entitled to judgment as a matter of law on D&D's claims. First, D&D cannot maintain a breach of implied warranty claim under the UCC against Metals Technology where the parties' agreement solely related to the performance of services. Second, D&D has not provided evidence that shows that Metals Technology breached an express warranty. Third, Metals Technology's liability ended once D&D sent the finger lever parts out for further processing. Accordingly, the Court enters judgment in favor of Metals Technology.

DATED: June 24, 2003                          ENTERED

AMY J. ST. EVE
United States District Court Judge