21-8376-00-2

**FILED**

FEB 17 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| IMI NORGREN, INC. | ) | |
| | ) | **DOCKETED** |
| Plaintiff(s) | ) | |
| | ) | FEB 18 2004 |
| v. | ) No. 00 C 5789 | |
| | ) | |
| D & D TOOLING & MANUFACTURING | ) Judge: Amy J. St. Eve | |
| INC., d/b/a ELECTRO METAL | ) | |
| PRODUCTS | ) | |
| Defendant(s) | ) | |

## NOTICE OF FILING

To: ARTHUR J. JAROS, ESQ.
RICHTER & JAROS
1200 Harger Road, Suite 830
Oak Brook, Illinois 60521-1822

PLEASE TAKE NOTICE that on the 17th day of February, 2004, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Plaintiff's Reply In support of Its Motion to Enforce Settlement, a copy of which is attached hereto and herewith served upon you.

PAUL BOZYCH

DOMINICK W. SAVAIANO
PAUL BOZYCH
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Plaintiff

871846

890195.1

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

## AFFIDAVIT OF SERVICE

The undersigned, being first duly sworn on oath, deposes and says that she served a copy of the above and foregoing Notice of Filing, together with a copy of the document therein referred, to each party to whom this Notice is directed, on February 17, 2004, from 10 South LaSalle Street, Chicago, Illinois

*Rosanne Abraham*

Subscribed and sworn to before me

this 17th day of February, 2004.

*Ana Castaneda*
Notary Public

"OFFICIAL SEAL"
ANA CASTANEDA
Notary Public, State of Illinois
My Commission expires 01/14/07

2

890195.1

21-8376-00-2/DWS/PB



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IMI NORGREN INC., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | No. 00 C 5789 |
| v. ) | |
| ) | Judge: Amy J. St. Eve |
| D&D TOOLING & MANUFACTURING ) | |
| INC., d/b/a ELECTRO METAL ) | |
| PRODUCTS, ) | |
| Defendant(s). ) | |

**DOCKETED FEB 1 8 2004**

### PLAINTIFF IMI NORGREN, INC.'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT

NOW COMES Plaintiff, IMI NORGREN, INC. (hereinafter "Norgren") by and through its attorneys, DOMINICK W. SAVAIANO, PAUL BOZYCH, and CLAUSEN MILLER, P.C., and for its Reply in support of its Motion to Enforce Settlement, states as follows:

### I. D&D's Preliminary Background Assertions are Inaccurate and Unreasonable

#### A. D&D's Actions have Obligated Norgren to Provide Indemnification and/or Collateralization

D&D states that Norgren's recitation of its *second* reason is "wholly spurious," because D&D has not set forth that Norgren was *obligated* to provide it with indemnification, nor that Norgren's failure to provide indemnification was, by itself, a reason for denying enforcement of the settlement. D&D response, page 3. However, by denying the validity of the settlement agreement itself, D&D is, indirectly, forcing Norgren to be responsible for D&D's failure to secure indemnification. Surely, Norgren is not responsible, in any way, for the feasibility or

desire of any other entity's indemnification of D&D. Following such logic, the very fact that D&D has set forth their lack of indemnification signifies D&D's intentions.

Essentially, D&D's assertion that settlement is not hinged upon Norgren's failure to provide indemnification is an argument in semantics. D&D has repeatedly referred to the possibility that Norgren would provide it with indemnification. D&D has also repeatedly, in the face of months of negotiations, failed to come forward with any other source of indemnification, failed to pursue any possible avenues to obtain indemnification, and failed to alert Norgren as to any possible other sources of indemnification. This has essentially placed an obligation on Norgren if they seek to move forward with settlement, regardless of D&D's failure to use the term "obligated." D&D's *actions* are that which obligate Norgren if settlement is to move forward. Indeed, if one simply follows the course of settlement negotiations, it is a completely reasonable belief that, if Norgren does not charitably undertake to indemnify D&D, settlement will not be reached. *See* Exhibit "A" (setting forth six (6) emails from Art Jaros between the dates of October 13, 2003 and October 27, 2003, none setting forth an alternative way to provide indemnification); D&D Response, Exhibit D, email from D&D counsel (stating that D&D has "yet to come up with a security agreement or something comparable."); D&D Response, Exhibit E, fax from D&D counsel (asking Norgren to "please review and see if you can help with some ideas."); D&D Response, Exhibit E, 9/15 email from D&D counsel (stating that D&D is awaiting Norgren's assistance on "providing collateral in the face of the anti-collateralization provisions contained in the D&D/Bank security agreement."); Exhibit "B", email from D&D counsel (stating that "a viable possibility would be if Norgren were willing to indemnify."); D&D Response, Exhibit F, email from D&D counsel (asking Norgren if they have "had a chance to confer with [Norgren authority] on the bank doc problem?"); Exhibit "C", Defendant's

Response, page 4 (stating that a possible solution would be for Norgren to "agree to indemnify D&D if D&D's banking relationship were impaired on account of D&D providing those elements of the settlement framework."); D&D Response, page 9 (stating that "Norgren [does not] propose what collateral is to be provided.").

Norgren is not a party, nor is it related in any way, to D&D's bank or its loan transactions and agreements. If D&D understood that receiving collateral or indemnification would lead to their complete inability to enter into a settlement agreement with Norgren, they should have suppressed the settlement negotiations and hearings long before a settlement framework was proposed. D&D cannot avoid its own responsibility for its "difficult problem" with its bank. *See* D&D Response. Indeed, there are only two parties to this settlement agreement, only one responsible for the securing of collateral and/or indemnification. Surely, either it is Norgren's responsibility to find indemnification for D&D (a responsibility which is inarguably ridiculous), or D&D is responsible for its own financial dealings. When referencing the possibility of Norgren's indemnification and collateralization, D&D even admits that, "I can understand why your client would not be eager to embrace that particular approach." D&D Response, Exhibit E, 9/15 email from D&D counsel.

### B. Norgren Does not Assert that Failure to Reach Settlement is a Drafting Problem

D&D claims that Norgren is incorrect in implying that settlement has not been reached due to a "drafting" problem. D&D Response, page 3. Actually, Norgren's interpretation of D&D's "first" reason is that "D&D claims unenforceability of the settlement agreement *due to the lack of resolution of 'several nuances'* of the settlement agreement **and** the *drafting and execution* of settlement documents." D&D's response to this language is thus inadequate in that it responds to an incorrect and incomplete interpretation of Norgren's motion.

3

889124.2

Alternatively, it is clear that one of the reasons that D&D did not move forward with settlement was due to a "drafting" problem, as evidenced by D&D's own pleadings. Indeed, D&D admits that the one of the three conditions precedent to the settlement framework was the "[d]rafting and execution of a mutually agreeable written settlement agreement." D&D Response, page 2. This language is nearly identical to Norgren's first reason for D&D's lack of entry into settlement.

Further, D&D's own Response shows that Norgren's interpretation of the "first" reason for D&D's inability reach settlement is actually accurate. Paragraph I(D) of D&D's Response sets forth three reasons for the lack of settlement, all of which are covered by Norgren's statement that D&D's lack of settlement is due to 1) inability to resolve "several nuances", and 2) lack of the drafting and execution of settlement documents.

### C. The Settlement Agreement was Not Subject to Conditions Precedent

D&D asserts that the settlement framework that was developed before Judge Denlow on August 12, 2003 was conditioned upon Norgren's later review of D&D's insurance policies, D&D's later review of its bank documents, finalization of all the details, and incorporation in a written and executed settlement agreement. D&D Response, page 4. This assertion is both incorrect and an inaccurate interpretation of law. First, if these were indeed "conditions" of the settlement agreement, D&D had ample opportunity to either place them on the record or to object to the incompleteness of the Court's recorded details. Exhibit "D". Second, Illinois caselaw is clear on the fact that an oral assertion on the record, in open court, of the details of a settlement will be enough to enforce the settlement. *Wilson v. Wilson*, 46 F.3d 660, 665 (7th Cir. 1995).

4

889124.2

D&D goes on to assert, in a quotation of the wording of their email of August 12, 2003, that a truly binding settlement will not have been attained until all the specific settlement terms have been worked out, agreed to, and signed by the parties. D&D Response, page 4. Again, this assertion attempts to usurp the authority of this Court and is contrary to Seventh Circuit authority. First, if it was indeed true that D&D felt that a settlement would not be attained until certain specifics were worked out, and if those specifics were not worked out as of the hearing on August 13, 2003, then D&D should not have agreed on the record that the parties had reached a settlement. Exhibit "D", page 4, lines 5-6. Second, the determination of whether to enforce settlement is up to this Court, not D&D, once the fact of settlement is set forth on the record. *Id.* Third, the authority is clear that the lack of agreement to "specifics" and "terms" will not serve to stop enforcement of settlement. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1093, 799 N.E.2d 469, 475 (1st Dist. 2003).

## II. The Settlement Agreement is Not Indefinite

D&D's argument as to the indefinite nature of the settlement agreement fails to state a reason that enforcement should be denied. Norgren and D&D agreed that a settlement had been reached and that only details need to be agreed upon and set in writing. Exhibit "D", page 2, lines 7-8; page 4, lines 14-15. D&D admits that only failure to agree on the "essential terms" of a contract will indicate a lack of mutual assent. D&D then goes on to utilize authority that deals with a factual scenario which is not analogous to the present case, and that is actually supportive of Norgren's position. *Rose v. Mavrakis*, an Illinois Appellate Court case cited by D&D, dealt with parties' attempts to enforce settlement. *Rose*, 799 N.E.2d at 472. The parties took part in a settlement conference in chambers. *Id.* The parties then filed motions as to the agreements made during the conference. *Id.* Defendant Piladakis filed his Motion to Enforce Settlement, alleging

that he and co-defendant Mavrakis had a "hand shake" agreement to settle the dispute and that the precise terms were to be memorialized in writing and presented to the Court by a certain date. *Id.* He also alleged that both parties had agreed to "all the material terms" in the Agreement, but that Mavrakis refused to sign a written agreement. *Id.*

Mavrakis's response to these allegations, similar to D&D's present argument, was that the parties had not reached a settlement, understanding instead that, after the settlement conference, it was still essential for the parties to resolve numerous essential terms. *Id.* The trial court granted enforcement of settlement "for the reasons stated on the record in open court." *Id.* The court noted that, while a written agreement still had to be prepared, the essential terms of the settlement had been stated before the parties and the Court, and "both sides agreed that a settlement had been reached." *Id.* Mavrakis argued that no settlement had been reached, and the court directly ruled on whether the settlement agreement and contained enough material terms to "constitute a contract." *Id.* at 473. The Court found that the parties had indeed agreed to the essential terms, thus forming a contract. *Id.* at 475.

### III. Settlement is not Subject to Conditions Precedent

D&D's argument that the settlement agreement was "conditional" lacks authority. In *Rose*, cited by D&D, the non-moving party stated a very similar argument to that of D&D. The non-moving party asserted that, when the parties left the court's chambers after the settlement conference, the settlement was still contingent upon the parries execution of a written understanding to resolve numerous essential terms. *Rose*, 799 N.E.2d at 473. The court held that the terms yet to be agreed upon were not so essential as to negate enforcement of the settlement. *Id.* at 475.

6

D&D attempts to assert that the lack of agreement on numerous terms of the settlement is the main reason that enforcement should be denied. However, the Seventh Circuit has been very clear in ruling on D&D's assertion, when they considered a factual scenario almost identical to the current one in *Wilson v. Wilson*, 46 F.3d 660. There, the Court first noted that the district court could only enforce completed settlement agreements, and noted that agreements that are not completed usually consist of instances when material facts concerning the existence or terms of an agreement to settle are in dispute. *Id.* at 664. The defendants in *Wilson* were attempting to fit their assertion of lack of settlement within this framework. *Id.* They stated, similarly to D&D in the present case, that the parties had not reached a "meeting of the minds" at the hearing before the court, and specifically that they had never agreed on the exact terms of Plaintiff's promise to drop his pending claims, whether Plaintiff would be barred from bringing all known claims against the defendants or only those reasonably known, whether the parties would execute mutual releases or covenants to sue, and who would be covered by the releases and covenants. *Id.* Seemingly in support of Norgren's contention, and in conflict with that of D&D, the Circuit held that these items were not enough to lead to a determination of lack of settlement. *Id.* at 664-65. The Circuit stated that, when the parties reached an agreement out of court and then "appeared before the court to hash out the specifics of that agreement and have these confirmed on the record," there would be no need to go further to determine whether a settlement had actually been reached. *Id.* at 665. In fact, the District Court stated eloquently that "having reached the conclusion that there was a settlement in open court, I don't see why I need to have a hearing on something that was actually accomplished in open court." *Id.* Contrary to D&D's assertions, the complete terms of settlement need not be put on the record in order to enforce

7

889124.2

settlement, and it is completely reasonable to enforce settlement when "several nuances" remain unresolved.

### IV. D&D did not Undertake an Essential Mistake of Fact Allowing for Equitable Rescission of the Settlement Agreement

D&D asserts that Enforcement of Settlement would indebt itself for $270,000 in deferred payments and would place it in default and trigger the personal guarantees of its shareholders. D&D also asserts that, because it was not aware of these consequences during mediation, such rises to the level of a mistake of fact, able to be equitably used to relieve it from its obligation. For this assertion, D&D cites *Vece v. DeBiase*, 46 Ill. App. 2d 248, 197 N.E.2d 79 (1st. Dist. 1964). *Vece*, however, lends support to Norgren's claim that settlement should be enforced. Norgren is in agreement with D&D that, in *Vece*, a government tax claim changed the bargaining position of the parties. *Id.* at 80-81. However, *Vece*, citing *Steinmeyer v. Schroeppel*, 226 Ill. 9, 80 N.E. 564 (1907), held that a court will only rescind an agreement through a material mistake of fact when 1) the party requesting rescission was without negligence, and 2) it can do so without injustice to the other party. *Id.* at 81. In the present case, D&D is not without negligence in failing to be aware of its own financial dealings with it bank. Further, failing to enforce settlement will prejudice Norgren in that they will be forced to expend further attorney fees and time in the litigation of the present matter, and will be forced to expend resources in assisting D&D with its own financial dealings.

### V. The Settlement Agreement is Not Outside the Statute of Frauds

D&D claims that the current settlement agreement falls within the Statute of Frauds, and thus, the lack of a written instrument should result in an unenforceable agreement. D&D begins the argument by citing to *Rose v. Mavrakis* for the position that a settlement framework that provides for a mutli-year stream of payments is subject to the Statute of Frauds, unless the

8

889124.2

parties reach a settlement agreement in conference in chambers or in open court, and the terms are stated in the judge's presence. D&D Response, page 12. However, the present settlement agreement actually comports with the Court's holding in *Rose* due to the fact that the parties here did actually both agree that a settlement had been reached in open court, and the terms were stated in the judge's presence, and confirmed by counsel for D&D. Exhibit "D", page 2, lines 7-8; page 4, lines 5-14.

D&D then goes on to claim that certain events occurred during the August 12, 2003 status hearing before Judge Denlow, but provides no documentation for these remarks. D&D Response, page 13. D&D claims that Judge Denlow confirmed at the *outset* of the August 12, 2003 session that no settlement had been reached. However, D&D conveniently sets forth no recitation of any remarks as to the presence of settlement made by Judge Denlow *during* or *at the close* of the hearing. Further, the issue at bar in the present case is whether the court will enforce settlement based upon the remarks made in open court *on August 13, 2003*, and the remarks made during the August 12th hearing do not form the basis of the present issue.

Regardless of D&D's inaccurate recitation of dates in their response, D&D asserts that the lack of a "complete recitation" of the terms of settlement on August 13th, and the fact that some terms remained unsettled, should be the basis for non-enforcement of the settlement agreement. D&D Response, page 13. Contrary to D&D's assertion, admission of entry into a "unconditional, complete and binding oral settlement" is not necessary in order for the court to find that the settlement agreement is enforceable. D&D Response, page 13. *Rose*, 799 N.E.2d at 475. *Wilson*, 46 F.3d at 665. The authority is clear that enforcement may be maintained after the oral recitation of a settlement agreement in open court in which the material terms of the agreement are set forth.

9

D&D next contests that it was obligated to object to the terms as set forth by Norgren's counsel at the August 13th hearing. D&D Response, page 13. D&D maintains that it was only under a "duty to object to obvious misstatements by Norgren's counsel." However, Norgren asserts that, at the very least, if D&D felt, as it asserts in its Response, that the parties had not reached a settlement due to the lack of agreement on various terms, D&D should have at least objected to Norgren's statements that "we have reached a settlement." Exhibit "D", page 2, lines 7-8. Further, D&D should have not stated that Norgren's statements were "accurate" and that the parties only had to hammer out "fine points." Exhibit "D", page 4, lines 5-15.

In *Kalman v. Bertacchi*, 57 Ill. App. 3d 542, 549, 373 N.E.2d 550, 556 (1978), relied on in cases cited by D&D, the parties stated their agreement in open court, which was transcribed by a court reporter. The *Kalman* Court held that the transcription of the parties' in-court agreement served the same purpose as a signed writing evidencing the agreement. *Id.* Thus, not only *Kalman* support Norgren's position that settlement should be enforced due to the statement of settlement in open court with transcription, but it also discredits D&D's repeated argument that the August 12, 2003 hearing before Judge Denlow served to dictate the intentions and agreements of the parties. *Id.* In the present case, just like in *Kalman*, the oral statements, in open court, before a reporter, trumped the statements that were not reported and not held in open court. *Id.* The purpose of the Statute of Frauds is not to enable parties "to repudiate contracts that they have in fact made; it is only to prevent the fraudulent enforcement of asserted contracts that were not made." *Rose*, 799 N.E.2d at 478.

### VI. Conclusion

In its conclusion, D&D grossly misstates Norgren's assertion. D&D notes that Norgren wishes to enforce settlement even in the face of the parties' "inability to agree on *certain* details

10

889124.2

of the settlement." D&D Response, page 14. D&D incongruently then goes on to state that Norgren's argument seeks to enforce settlement in the face of "unagreed essential substantive details." Surely, D&D's slight of hand with this wording is not enough to establish its case. The details yet to be agreed upon after the August 13th hearing were not essential substantive terms, but merely unresolved details. The Courts have clearly stated that such is not an adequate reason for failure to enforce settlement.

Indeed, if D&D agrees that a settlement has been reached, with only details to iron out, then *Wilson, Rose, Kalman,* and the plethora of other Illinois and Seventh Circuit authority urges this Honorable Court's enforcement of the settlement, regardless of the details. If D&D believes that no settlement has been reached, then it should have objected during the August 13th hearing. Unfortunately for D&D, there is no middle ground in this area of law. *See Wilson*, 46 F.3d at 665 (enforcing settlement regardless of the fact that the parties had not yet agreed to all settlement details, and noting that defendants should have objected on the record if they believed that the settlement was non-binding as stated). Norgren and D&D reached a settlement agreement, asserted that the agreement was reached in open court and on the record, set forth the material elements of the settlement, and sought to agree on other, more non-essential items at a later date. Thus, the settlement agreement reached by the parties should be enforced.

Wherefore, based on the above authority, the pleadings of the parties, and the power of this Honorable Court, Plaintiff IMI NORGREN, INC. respectfully requests that this Honorable Court enter and enforce the terms of its settlement in accordance with its Motion to Enforce Settlement, and for any other relief that the Court deems just and proper.

Respectfully submitted,

_____
PAUL BOZYCH
CLAUSEN MILLER P.C.

DOMINICK W. SAVAIANO
PAUL BOZYCH
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Plaintiff IMI NORGREN, INC.

12

889124.2

# SEE CASE FILE FOR EXHIBITS