# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy St. Eve | Sitting Judge If Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5789 | **DATE** | 3/3/2004 |
| **CASE TITLE** | IMI Norgren, Inc. vs. D&D Tooling Manufacturing, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The parties negotiated in good faith with the expectation of entering into a settlement. They came close but did not agreed on a material term nor did they enter into a fully executed written agreement. Therefore, Plaintiff's motion to enforce settlement [189-1] is denied. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. The parties are encouraged to continue their settlement efforts.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 0 4 2004 | |
| | Notified counsel by telephone. | date docketed | 200 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 3/3/2004 | |
| DK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | DK6 mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IMI NORGREN, INC., <br> a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> D&D TOOLING <br> MANUFACTURING, INC., <br> an Illinois corporation, <br> d/b/a ELECTRO METAL <br> PRODUCTS, <br><br> Defendant. | Case No. 00 C 5789 <br><br> Magistrate Judge Morton Denlow |

DOCKETED
MAR 0 4 2004

## MEMORANDUM OPINION AND ORDER

Close only counts in horseshoes not settlement agreements. The parties in this case have come close to a settlement agreement, but did not reach one.

This case comes before the Court on Plaintiff IMI Norgren, Inc.'s ("Plaintiff" or "IMI"), motion to enforce settlement agreement. Plaintiff contends the parties reached a settlement agreement. Defendant D & D Tooling & Manufacturing, Inc., d/b/a Electro Metal Products ("Defendant" or "D&D") acknowledges that the parties were close to reaching a settlement agreement, but denies that an agreement was ever reached on all the material terms. In particular Defendant contends that the parties did not settle the case because 1) they did not reach agreement on the type of security Defendant would provide to secure a $270,000 promissory note, and 2) the settlement was contingent on the parties executing a written settlement agreement, which they did not do.

The Court has carefully considered the parties' briefs and oral arguments. The following constitute the Court's findings of fact and conclusions of law. To the extent that certain findings of fact may be deemed conclusions of law, they shall also be considered conclusions of law. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings of fact.

## I. ISSUES PRESENTED

This case raises the following issues:

> 1) Whether securing the note was a material term of the settlement agreement. Answer: Yes.
>
> 2) Whether the settlement was contingent upon executing a written settlement agreement. Answer: Yes.
>
> 3) Whether a settlement agreement was ever reached. Answer: No.

## II. FINDINGS OF FACT

### A. AUGUST 12, 2003 SETTLEMENT CONFERENCE

1. The proposed settlement framework arose out of a settlement conference before this Court on August 12, 2003. Present at the settlement conference were Plaintiff's counsel and Plaintiff, and Defendant's counsel and Bill Diedrick (representing Defendant). Both Plaintiff and Bill Diedrick had full authority to settle. The following settlement framework was reached:

> a) cash payout of $300,000 by D&D to IMI ($30,000 up front and $270,000 over nine years);

b) a consent judgment by D&D in the amount of damages claimed in case, and

c) IMI agrees not to execute the consent judgment against D&D (other than the $300,000 settlement amount).

*See* Def. Resp., Exs. 1, 2. The following issues were outstanding at the conclusion of the settlement conference: (1) Plaintiff's right to review Defendant's insurance policies, and (2) Defendant's right to consult bank documents to determine whether Defendant could secure the $270,000 note without violating its loan agreement with its bank. *See id.* Neither the insurance policies nor the banking agreements were present at the settlement conference.

2. No settlement was reached at the August 12, 2003 settlement conference. The parties agreed to continue their work on the outstanding issues and to report their status to Judge St. Eve at a status conference the next day.

### B. COMMUNICATIONS AFTER THE SETTLEMENT CONFERENCE

3. By the evening of August 12, 2003, Plaintiff was able to review Defendant's insurance policies. The review found the policies to be "satisfactory" and the insurance issue was resolved. The major remaining issue was security for the loan. *See* Def. Resp., Exs. 1, 2.

4. On the evening of August 12, 2003, counsel for the parties exchanged email communications to discuss the settlement. *Id.* Plaintiff's counsel sent an email that stated "IMI Norgren accepts D&D's offer" of $300,000 to be paid $30,000 up front and the remaining $270,000 to be paid $30,000 over nine years. Def. Resp., Ex 1. Plaintiff's counsel also wrote that the "note for the $300,000 will be subject to some security from D&D." *Id.*

3

5. Defendant's counsel immediately responded that the parties had worked out the

> major points of the framework of an agreement to resolve the case [but there is a] concern . . . over those details that [had] not been finalized but yet are recognized as being part of the settlement framework, for example, the collateral or security to be provided by D&D for its stream of deferred payments and the documentation that will be required in connection with the financial representations made by Bill Diedrick today. . . .
> . . .
> While the parties have reached agreement in principle on the major components of settlement as noted above and by your e-mail, it is our . . . view, as expressed to you, that a truly binding settlement will not have been attained until all of the specific settlement terms are worked out and agreed to in a settlement agreement signed by the parties.

Def. Resp., Ex. 2. Defendant's counsel also stated that he was "not authorized by D&D to approve settlement terms." *Id.*

## C.   AUGUST 13, 2003 STATUS HEARING BEFORE JUDGE ST. EVE

6. On August 13, 2003, the parties' counsel appeared before Judge St. Eve. Plaintiff's counsel stated that the parties had "agreed to resolve the case" and commented that the resolution was "complicated." Pl. Br., Ex. A at 2. He asked for time to draft the agreement and, in response to Judge St. Eve's question about whether the terms were on record, said: "The offer was spelled out in front of Judge Denlow, and then we agreed it – upon it – last night, and memorialized it by email." *Id.* at 3.

7. The major terms of the agreement were stated by Plaintiff's counsel as follows:

(a) Defendant consented to the amount of damages as set forth in Plaintiff's summary of damages.

(b) Defendant would execute a note to pay Plaintiff $300,000 over nine years.

(c) $30,000 of the $300,000, was to be paid up front.

(d) The note was to be secured in some way.

(e) Defendant would provide a sworn statement confirming their financial position.

(f) Defendant would assign to Plaintiff its rights against its insurers.

*Id.*

8. In response to whether he agreed with the terms outlined by Plaintiff's counsel, Defendant's counsel said: "What counsel has said is accurate." *Id.* at 4. He also stated that there were some "fine-point details" that had to be worked out, such as security. *Id.*

9. Judge St. Eve commented that there seemed to be "several nuances" that still needed to be resolved. *Id.* Judge St. Eve struck the trial date and gave the parties two weeks to finalize the settlement. *Id.*

10. As of August 13, 2003, both parties were unaware of the terms and conditions of the bank lending agreement. The issue of security was not resolved during the August 13, 2003 status hearing, and it remained the subject of continued oral and written communications between the parties' counsel. *See* Def. Resp., Exs. 3-8.

### D. EVENTS FOLLOWING THE AUGUST 13, 2003 STATUS HEARING

11. In late August, Defendant received a minute order from Judge St. Eve, as a result of Plaintiff's August 28, 2003 motion to enter a consent judgment and dismiss the case. Def. Memo. of Law, Exs. D, H. The minute order stated that a consent judgment was entered and the case was dismissed with prejudice with leave to reinstate. *Id.* Defendant did not believe

5

that this order accurately reflected the result of the August 13, 2003 status hearing. *Id.* On September 8, 2003, Defendant consequently filed a motion to vacate the consent judgment. The motion stated:

> D&D never consented to entry of consent judgment on August 28, 2003. Rather, at the call of the case on August 13, 2003, counsel for D&D and for Norgren informed the Court that the parties had agreed to resolve the case, that major points had been agreed upon, that other points remained to be worked out, and that settlement documents were to be prepared and executed once all terms were finalized.

Def. Memo. of Law, Ex. H. The motion to vacate further stated, "D&D is willing to agree to entry of a consent judgment only as part of the complete settlement of the case. D&D has never agreed to a piecemeal settlement wherein it would suffer a consent judgment prior to completion and execution of a comprehensive settlement agreement." *Id.* Defendant's motion to vacate was granted. Def. Memo of Law, Ex. I.

12. At some time between August 13, 2003 and September 8, 2003, Defendant examined its bank documents and determined that they potentially interfered with the possibility of being able to secure the note. *See* Def. Resp., Ex. 7; Def. Memo. of Law, Ex. C. The documents set forth provisions that did not permit Defendant to create a security interest in favor of other creditors without bank consent, and prevented D&D from incurring additional debt even if the new debt was subordinated to the bank debt. Def. Resp., Exs. 3, 7.

13. Plaintiff raised the issue of whether D&D's individual shareholders would personally guarantee the note, but the individuals found personal guarantees to be

unacceptable. Def. Resp. at 4.; Def. Resp., Exs. 4, 5. Plaintiff later "confirmed that personal liability of D&D's shareholders was not to be part of the settlement agreement." Def. Resp. at 4; *see also* Def. Resp., Ex. 6. Defendant attempted to resolve the security dispute by asking Plaintiff to offer an indemnification agreement that would "hold D&D and the [shareholders] harmless for entering into a transaction that would unfortunately constitute a default." Def. Resp., Ex. 12. Plaintiff was unwilling to enter into such an agreement.

14. On September 8, 2003, Defendant received Plaintiff's draft settlement agreement. Entering into the settlement agreement without bank consent would place Defendant in default with its bank. *See* Def. Resp., Ex. 3, 7; Def. Resp. at 6. As of yet, no settlement agreement has been signed and the issue of security has not been resolved.

15. The parties stipulated in oral arguments, and this Court finds, that security for the $270,000 note was a material term of the settlement agreement.

16. The parties have not entered into a binding and enforceable settlement agreement.

### III. CONCLUSIONS OF LAW

A.  **JURISDICTION**

17. Jurisdiction is founded upon diversity of citizenship under 28 U.S.C. § 1332. The parties have executed limited consents to have this Court decide the motion to enforce settlement agreement pursuant to 28 U.S.C. § 636(c)(1).

## B. SECURITY WAS A MATERIAL TERM

18. Security for the $270,000 was a material term of the settlement. The settlement was subject to Defendant's review of bank documents in order to assure that nothing in a settlement agreement between the parties would risk the relationship between Defendant and its bank. During the status hearing before Judge St. Eve when the terms were read into the record, Defendant's counsel said that there are "some fine-point details to work out, such as security, which we haven't hammered out yet." Pl. Br., Ex. A at 4. Security for the note was a material term because Plaintiff was unwilling to enter into the settlement without adequate security for the $270,000 note payable over nine years.

## C. NO SETTLEMENT AGREEMENT WAS REACHED

19. The construction and enforcement of settlement agreements are governed by local contract law. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). Under Illinois contract law, a binding agreement requires a meeting of the mind or mutual assent as to all material terms. *Id.*; *Pritchett v. Asbestos Claims Mgm't Corp.*, 332 Ill. App. 3d 890, 896 (5th Dist. 2002) Plaintiff has the burden of proving the existence of all the elements of a contract. *Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363 (N.D. Ill. 1996). Illinois law uses "material" and "essential" interchangeably when analyzing contract terms. *See Academy Chi. Pubs. v. Cheever*, 144 Ill. 2d 24, 29-30 (1991) ("Offer must be definite as to its material terms." "The pertinent language of this agreement lacks the definite and certain essential terms required for the formation of an enforceable contract."); *Rose v.*

*Mavrakis*, 343 Ill. App. 3d 1086, 1090-91 (1st Dist. 2003); *Pritchett*, 332 Ill. App. 3d at 896. There will be a meeting of the minds "where there has been assent to the same things in the same sense on all essential terms and conditions." *Pritchett*, 332 Ill. App. 3d at 896 (citing *La Salle Nat'l Bank v. Int'l Ltd.*, 129 Ill. App. 2d 381, 394 (1970)). Further, for a contract to be definite and enforceable "its terms and provisions must enable the court to determine what the parties have agreed to do." *Rose*, 343 Ill. App. 3d at 1091; *see also Cheevers*, 144 Ill. 2d at 30 (quoting *Morey v. Hoffman*, 12 Ill. 2d 125, 131 (1957)).

20. The term pertaining to security is too indefinite in this case. All that was agreed to was that the payment was to be secured in some fashion. No other terms were spelled out. If there is ambiguity in an agreement it will prevent the enforcement of a contract "where the ambiguity affects the material terms of the contract." *Pritchett*, 332 Ill. App. 3d at 897 (quoting *Wilson v. Middendorf*, 248 Ill. App. 3d 870, 872 (1993)). Simply stated, the parties did not agree how to secure the $270,000.

21. There is no enforceable settlement because there was never a meeting of the minds to resolve how to secure the note.

### D. NO AGREEMENT WAS REACHED BECAUSE THE DEFENDANT CONDITIONED A FINAL SETTLEMENT ON A WRITTEN EXECUTED AGREEMENT

22. Oral settlement agreements may be enforced if there is "an offer, an acceptance, and a meeting of the minds regarding the terms." *Pritchett*, 332 Ill. App. 3d at 896. Yet, the Statute of Frauds requires all contracts that cannot be performed within one year to be

memorialized in a signed writing. Frauds Act § 1. An exception to the Statute of Frauds exists if a settlement agreement has been reached

> during a court-mandated settlement conference conducted in the judge's chambers and state[s] the terms of that agreement in the judge's presence, there is no danger of enforcement of a contract which was, in fact, never made. This is so even if no transcript or written order memorializing the agreement is prepared on the date the agreement is reached.

*Rose*, 343 Ill. App. 3d at 1097. In such a case, no writing is required. The policy behind this rule is that the judge in the settlement conference can resolve any disputes over whether an agreement was made. *Id.* There was no settlement agreement reached at the settlement conference on August 12, 2003.

23. Email communications memorialized the status of the proposed agreement based on the progress made during the settlement conference. On the evening of August 12, 2003, Defendant's counsel clearly stated in his email that there would be no binding agreement until the terms were committed to writing and signed. Def. Resp., Ex. 2. On August 13, 2003, Plaintiff's counsel stated on the record that the agreement was "memorialized" in the August 12, 2003 emails, and implied that those terms (including the writing requirement) were the terms of any potential agreement. Pl. Br., Ex. A. This fact distinguishes this case from Statue of Frauds exception in *Rose*. In this case, a writing was specifically required in order to have a binding agreement. It is a rule that "[i]nformal writings between the parties can constitute a binding settlement agreement unless the parties decide to expressly condition their deal on the signing of a formal document." *Abbott Labs.*, 164 F.3d at 388-89. In this

case, the parties agreed that there was no settlement until the terms were committed to writing and the agreement signed. Neither party ever signed the proposed settlement agreement.

### E. NO SETTLEMENT AGREEMENT WAS REACHED BECAUSE DEFENDANT'S COUNSEL DID NOT HAVE FULL AUTHORITY TO SETTLE IN THE ABSENCE OF HIS CLIENT

24. Counsel for Defendant stated in his email that he did not have authority to "approve settlement terms" on the evening of August 12, 2003 after the settlement conference had ended. Def. Resp., Ex. 2. Illinois law requires an attorney to have express authority to enter into a settlement agreement to bind his client:

> The authority of an attorney to represent a client in litigation is separate from and does not involve the authority to compromise or settle the lawsuit. An attorney who represents a client in litigation has no authority to compromise, consent to a judgment against the client, or give up or waive any right of the client. Rather, the attorney must receive the client's express authorization to do so.
> [citations omitted.]
> Where a settlement is made out of court and is not made part of the judgment, the client will not be bound by the agreement without proof of express authority.

*Brewer v. Nat'l Railroad Passenger Corp.*, 165 Ill. 2d 100, 105 (1995); *See Khan v. Hosp. Laundry Servs., Inc.*, No. 01 C 0681, 2002 WL 1610952, at *4 (N.D. Ill. July 18, 2002).

25. Defendant's counsel clearly stated to Plaintiff's counsel that he did not have any authority to approve settlement terms. Def. Resp., Ex. 2. Further, he stated that the reason specific terms were not discussed at the settlement conference was because he did not have authority to do so. *Id.* Defendant never gave its counsel authority to enter into an agreement

11

that would violate its loan agreement with its lender. In this case, counsel for Defendant can not bind his client without express authorization, and no such authorization existed.

## IV. CONCLUSION

**The parties negotiated in good faith with the expectation of entering into a settlement. They came close but did not agree on a material term nor did they enter into a fully executed written agreement. Therefore, Plaintiff's motion to enforce settlement is denied and the case is returned to Judge St. Eve for further proceedings. The parties are encouraged to continue their settlement efforts.**

**SO ORDERED THIS 3rd DAY OF MARCH, 2004.**

*/s/ Morton Denlow*
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Dominick W. Savaiano
Paul Bozych
CLAUSEN MILLER P.C.
10 South LaSalle Street, Suite 1800
Chicago, IL 60603-1098

Counsel for Plaintiff

Arthur G. Jaros, Jr.
RICHTER & JAROS
1200 Harger Road, Suite 830
Oak Brook, IL 60523

Counsel for Defendant